UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DAVID SCOTT HAESE, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. CIV-17-15-CG ) |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | ) ) ) ) |
| Defendant. | ) |

## OPINION AND ORDER

Plaintiff David Scott Haese brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying Plaintiff's applications for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income ("SSI") under Title XVI of the Social Security Act, *id.* §§ 1381-1383f. The parties have consented to the jurisdiction of a United States Magistrate Judge. Upon review of the administrative record (Doc. No. 7, hereinafter "R. \_"),[1] and the arguments and authorities submitted by the parties, the Court reverses the Commissioner's decision and remands the case for further proceedings.

PROCEDURAL HISTORY AND ADMINISTRATIVE DECISION

Plaintiff protectively filed his DIB application on June 17, 2010. R. 256-62, 273-80, 303. Following denial of his application initially and on reconsideration, a hearing was

---

[1] With the exception of the administrative record, references to the parties' filings use the page numbers assigned by the Court's electronic filing system.

held before an Administrative Law Judge ("ALJ") on December 16, 2011. R. 40-72, 108-13, 256-62, 303-05. Three days later, Plaintiff filed his SSI application. R. 273-80. The ALJ issued an unfavorable decision on January 10, 2013, and Plaintiff appealed to the SSA Appeals Council. R. 111-25, 199. The Appeals Council granted review and vacated the denial of benefits, remanding the case to an ALJ for resolution of multiple issues and to allow Plaintiff the opportunity for a new hearing. R. 126-31.

On remand, a hearing was conducted before a different ALJ. R. 73-107. Plaintiff appeared at the hearing, along with a vocational expert. R. 77-106. On October 19, 2015, the ALJ issued an unfavorable decision. R. 13-39.

As relevant here, the Commissioner uses a five-step sequential evaluation process to determine entitlement to disability benefits. *See Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009); 20 C.F.R. §§ 404.1520, 416.920. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since February 13, 2012, Plaintiff's amended disability-onset date. R. 17, 19, 76-77. At step two, the ALJ determined that Plaintiff had the following severe impairments: mild degenerative joint disease in his right hip; mild degenerative disc disease in his lumbar spine; shortness of breath; sleep apnea; hypertension; and obesity. R. 19-24. The ALJ also determined that Plaintiff's mental impairment was nonsevere in nature. R. 24-27. At step three, the ALJ found that Plaintiff's condition did not meet or equal any of the presumptively disabling impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 27.

The ALJ next assessed Plaintiff's residual functional capacity ("RFC") based on all of his medically determinable impairments ("MDIs"). R. 27-31. The ALJ found that Plaintiff has the RFC to perform sedentary work with additional limitations:

> [T]he claimant can frequently lift/carry/push/pull less than 10 pounds; occasionally lift/carry/push/pull 10 pounds; sit 6 hours in an 8 hour day; stand/walk 2 hours in an 8 hour day; cannot climb ladders, ropes, or scaffolds; cannot kneel, crouch, or crawl; occasionally climb stairs and ramps; occasionally balance and stoop; and uses oxygen with cannula as needed.

R. 27. At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. R. 32.

At step five, the ALJ considered whether there are jobs existing in significant numbers in the national economy that Plaintiff—in view of his age, education, work experience, and RFC—could perform. R. 32-33. Relying upon the VE's testimony regarding the degree of erosion to the unskilled sedentary occupational base caused by Plaintiff's additional limitations, the ALJ concluded that Plaintiff could perform sedentary occupations such as table worker, telephone-quotation clerk, and call-out operator, and that such occupations offer jobs that exist in significant numbers in the national economy. R. 32-33. Therefore, the ALJ determined that Plaintiff had not been disabled within the meaning of the Social Security Act during the relevant time period. R. 33.

Plaintiff's request for review by the Appeals Council was denied, and the unfavorable determination of the ALJ stands as the Commissioner's final decision. *See* R. 1-6; 20 C.F.R. §§ 404.981, 416.1481.

## STANDARD OF REVIEW

Judicial review of the Commissioner's final decision is limited to determining whether factual findings are supported by substantial evidence in the record as a whole and whether correct legal standards were applied. *Poppa v. Astrue*, 569 F.3d 1167, 1169 (10th Cir. 2009). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) (internal quotation marks omitted). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004) (internal quotation marks omitted). The court "meticulously examine[s] the record as a whole," including any evidence "that may undercut or detract from the ALJ's findings," "to determine if the substantiality test has been met." *Wall*, 561 F.3d at 1052 (internal quotation marks omitted). While a reviewing court considers whether the Commissioner followed applicable rules of law in weighing particular types of evidence in disability cases, the court does not reweigh the evidence or substitute its own judgment for that of the Commissioner. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008).

## ANALYSIS

In this action, Plaintiff asserts that the ALJ erred in evaluating his subjective complaints of symptoms and that the ALJ improperly neglected to order a second consultative exam. *See* Pl.'s Br. (Doc. No. 19) at 6-12.

A. *Whether the ALJ Properly Evaluated Plaintiff's Subjective Complaints*

The relevant Social Security Ruling[2] required an ALJ to evaluate a claimant's symptoms—e.g., "pain, fatigue, shortness of breath, weakness, or nervousness"—according to a two-step process. SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996); *accord* 20 C.F.R. §§ 404.1529(b)-(c), 416.929(b)-(c) (2015). First, the ALJ "must consider whether there is an underlying medically determinable physical or mental impairment(s)" "that could reasonably be expected to produce" the claimant's pain or other symptoms. SSR 96-7p, 1996 WL 374186, at *2. Second, if such an impairment is shown, the ALJ "must evaluate the intensity, persistence, and limiting effects" of the claimant's symptoms "to determine the extent to which the symptoms limit the [claimant's] ability to do basic work activities." *Id.* In connection with this second step, "whenever the [claimant's] statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the [ALJ] must make a finding on the credibility of the [claimant's] statements based on a consideration of the entire case record." *Id.* (citing 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4)).

In determining Plaintiff's RFC, the ALJ summarized Plaintiff's statements and hearing testimony, including Plaintiff's allegations of chest pain, shortness of breath, back and hip pain, frequent urination, and depression. R. 28-29. The ALJ also discussed third-party statements submitted by acquaintances of Plaintiff and generally referred to some

---

[2] Social Security Ruling 96-7p has now been replaced by Social Security Ruling 16-3p, which applies to determinations and decisions made by the SSA on or after March 28, 2017. *See* SSR 16-3p, 2017 WL 5180304, at *1 (Oct. 25, 2017).

5

items of medical evidence relevant to Plaintiff's complaints of shortness of breath and pain. R. 29, 30-31. In accordance with the first step of the required analysis, the ALJ found that Plaintiff had MDIs that "could reasonably be expected to cause the alleged symptoms." R. 31.

At the second step, the ALJ determined that Plaintiff's statements concerning his symptoms "are not entirely credible." R. 31. In making this credibility determination, the ALJ failed to comply with controlling case law and Social Security Ruling 96-7p. Specifically, the ALJ relies on factors that require consideration of certain evidence, but the ALJ's discussion does not reflect that she considered the matters required. Absent proper evaluation, the cited factors may not properly be relied on to support the ALJ's credibility determination and that determination is left unsupported by substantial evidence.

1. Discussion of Objective Medical Evidence

The ALJ cited lack of substantiation by objective medical evidence as a ground for finding that Plaintiff's statements concerning his symptoms "are not entirely credible." R. 31. In this regard, the ALJ stated:

> Physical findings and objective test results have failed to reveal conditions which might be expected to produce the pain and other symptoms alleged by [Plaintiff]. [Plaintiff's] allegations are not substantiated by the medical evidence to the extent alleged and are not sufficiently credible to support a finding of disability as discussed more completely above.

R. 31.

The ALJ does not identify *which* "findings," "tests," and "evidence" support this conclusion. Nor does the ALJ attempt to resolve the tension between the quoted statement

6

(that "[p]hysical findings and objective test results have failed to reveal conditions which might be expected to produce the pain and other symptoms alleged") and the ALJ's prior finding at step one of the credibility evaluation (that Plaintiff's MDIs "could reasonably be expected to cause [Plaintiff's] alleged symptoms"). R. 31. This aspect of the ALJ's decision is not "'closely and affirmatively linked to substantial evidence'"—to the contrary, these statements are "'just a conclusion in the guise of findings.'" *Hardman v. Barnhart*, 362 F.3d 676, 678-79 (10th Cir. 2004) (quoting *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995)); *see* SSR 96-7p, 1996 WL 374186, at *4 ("The reasons for the credibility finding must be grounded in the evidence and articulated in the . . . decision."). Absent the required analysis, the ALJ's discussion of the objective medical evidence does not support the ALJ's adverse credibility determination.

2. Discussion of Plaintiff's Criminal History

The ALJ cited, in the course of her credibility evaluation, testimony reflecting that Plaintiff had been arrested, served time in jail, and had restraining orders issued against him. R. 28; *see* R. 89-91. "No elaboration on these facts is made and, specifically, no findings are made as to how or why Plaintiff's . . . criminal history impact[s] Plaintiff's credibility or the RFC assessment." *Murray v. Berryhill*, No. CIV-15-364-CG, 2017 WL 4010868, at *5 (W.D. Okla. Sept. 12, 2017). Absent any explanation of relevance, these references to Plaintiff's admitted criminal history do not provide support for the ALJ's adverse credibility determination. *See id.*; *cf. Lee v. Colvin*, No. CIV-13-772-F, 2014 WL 7365934, at *5 (W.D. Okla. Dec. 24, 2014) (upholding ALJ's credibility determination

7

where the ALJ specifically found that the claimant's "inconsistent statements" concerning his criminal history "detracted from his credibility").

### 3. Discussion of Plaintiff's "Failure to Make Lifestyle Modifications"

The ALJ also cited, in support of her credibility finding, that Plaintiff had "fail[ed] to make lifestyle modifications suggested by healthcare providers." R. 29. The record reflects that Plaintiff is extremely obese, with a height of 5'8" and a weight in June 2015 of 430 pounds. *See* R. 482, 562, 593, 596, 599, 600, 618, 619, 621, 623, 629 (reflecting that Plaintiff's weight fluctuated but generally increased from 291 pounds in November 2008 to 430 pounds in June 2015). The ALJ found Plaintiff's obesity to be a severe MDI at step two. R. 21, 23-24. As part of the credibility evaluation, the ALJ stated:

> The undersigned notes exercise, dietary change, and lifestyle changes have been suggested. However, laboratory findings of hypercholesterolemia even with medication and the claimant's increasing body mass suggest he has failed to follow these suggestions. The claimant's failure to make lifestyle modifications suggested by healthcare providers reflects poorly on his overall credibility before the undersigned.

R. 29; *see also* R. 20 (citing R. 621); R. 23 (citing R. 573).

This finding is at odds with SSA guidance on obesity treatment. Social Security Ruling 02-1p states that "[o]besity is a life-long disease" and "[d]espite short-term progress, most treatments for obesity do not have a high success rate." SSR 02-1p, 2002 WL 34686281, at *8, *9 (Sept. 12, 2002). The Ruling instructs that obesity treatment "must be prescribed by a treating source . . . , not simply recommended," and that "[a] treating source's statement that an individual 'should' lose weight or has 'been advised' to get more exercise *is not prescribed treatment*." SSR 02-1p, 2002 WL 34686281, at *9

(emphasis added). Specifically, the Ruling states, "[W]e will not find failure to follow prescribed treatment unless there is clear evidence that treatment would be successful." *Id*. Thus, prior to faulting Plaintiff for failing to follow obesity treatment, the ALJ should have considered whether the "suggestions" at issue were in fact prescriptions by a treating source and whether such treatment was likely to be successful. Absent the required analysis, the ALJ's discussion of Plaintiff's failure to comply with obesity treatment does not support the ALJ's adverse credibility determination.

### 4. Discussion of Plaintiff's Failure to Seek Additional Treatment

Finally, the ALJ discounted Plaintiff's credibility based upon Plaintiff's lack of pursuit of medical treatment:

> Lastly, the undersigned notes the claimant typically receives medical attention on a follow-up basis for laboratory testing. The claimant has rarely presented for email [sic] to care or to the office of a treating practitioner with complaints of acute exacerbation of chest pain, shortness of breath, or musculoskeletal pain. . . . . Although the claimant alleges he is disabled, in part, due to depression, the undersigned notes the claimant has failed to seek mental health treatment for a condition he alleges to be disabling. One would anticipate the claimant would seek treatment other than medication for a condition he alleges to be disabling.

R. 29-30. The ALJ failed, however, to consider Plaintiff's explanations or other record evidence that may provide justification for Plaintiff's failure to pursue additional medical treatment. Specifically, there is no indication that the ALJ considered the effect of Plaintiff's lack of financial resources on the type and frequency of care he received, or on Plaintiff's failure to seek emergency, specialized, or mental-health care, prior to discounting Plaintiff's statements regarding his symptoms.

9

The record reflects that Plaintiff received the majority of his medical care through the Volunteer Health Center, a free clinic. R. 78, 562-64, 585-622, 629-30. Plaintiff's testimony at his first hearing indicated that Volunteer Health Center is only open "once a week." R. 50. Plaintiff also testified that all of his medications are provided by this clinic and that the clinic will not provide him with "depression medication or anything else." R. 49, 51. A February 2014 record from Volunteer Health Center notes that Plaintiff complained of chronic pain but the provider advised Plaintiff that the clinic does not provide chronic-pain management. R. 586. At the second administrative hearing, Plaintiff also testified that he has no income and no insurance and receives food stamps. R. 96. He stated that he had not gotten treatment elsewhere for his back and knees because he "can't afford it." R. 96; *see also* R. 63 (Plaintiff testifying at first hearing that he gets meals from a community food pantry), 546 (state-agency psychological consultant noting that Plaintiff lives "in a shelter").

The record also shows that Plaintiff received care at Latimer County Health Clinic. R. 474-504, 524, 623. At the second hearing, Plaintiff testified that he had not been to that facility since February 2011 due to an inability to pay for his prior care, stating, "I owe them money so I can't go to them." R. 77.

Pursuant to Social Security Ruling 96-7p, a claimant's "statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints." SSR 96-7p, 1996 WL 374186, at *7. However, the ALJ "must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual

10

may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment." *Id.* The Ruling gives a specific example of a valid explanation: "[t]he individual may be unable to afford treatment." *Id.* at 8; *see also Threet v. Barnhart*, 353 F.3d 1185, 1190 n.7 (10th Cir. 2003) (noting that "inability to pay may provide a justification for a claimant's failure to seek treatment" (citing *Thompson v. Sullivan*, 987 F.2d 1482, 1489-90 (10th Cir. 1993))).

The ALJ's discounting of Plaintiff's credibility based on the type and frequency of care that Plaintiff sought does not reflect that the ALJ considered the effect of Plaintiff's lack of financial resources. R. 29-30. Absent the required analysis, the ALJ's discussion of Plaintiff's failure to seek additional treatment does not support the ALJ's adverse credibility determination.

5. Summary

As detailed, the ALJ rested her credibility determination on factors that required the ALJ to consider certain evidence—but the ALJ's discussion does not indicate that she did so. Taken together, these flaws leave the Court unable to find that the ALJ's credibility determination is supported by substantial evidence in the record or conclude that the ALJ properly followed the directives of Social Security Ruling 96-7p. *See Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994) (noting that court must "take into account whatever in the record fairly detracts from its weight" in determining whether a decision is supported by substantial evidence and that failure to provide the court "with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal" (internal quotation marks omitted)). This, in turn, constrains the Court to find

that the ALJ's RFC determination is not supported by substantial evidence in the record. *See Poppa*, 569 F.3d at 1171 ("[T]he ALJ's credibility and RFC determinations are inherently intertwined.").

B. *Whether the ALJ Otherwise Erred*

Because the error cited above necessitates remand of this action for further proceedings, the Court need not address the remaining claim of error raised by Plaintiff. *See Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

## CONCLUSION

The decision of the Commissioner is REVERSED and REMANDED for further proceedings in accordance with sentence four of 42 U.S.C. § 405(g). Judgment shall issue accordingly.

ENTERED this 13th day of March, 2018.

CHARLES B. GOODWIN
UNITED STATES MAGISTRATE JUDGE